UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| MELISSA ANN PIGG, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant ) | Case No. 3:17-cv-01080-HNJ |

## MEMORANDUM OPINION

Plaintiff, Melissa Ann Pigg, seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Disability Insurance Benefits (DIB). The court has carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity.

2

20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Jones*, 190 F.3d at 1228 ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot

perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

In her opinion, the ALJ first determined that Pigg met the Social Security Act's insured status requirements through December 31, 2017. (Tr. 14). Applying the five-step sequential process, the ALJ found at step one that Pigg had not engaged in substantial gainful activity from her alleged onset date of January 25, 2013, through the date of the ALJ's opinion, May 17, 2016. (*Id.*). At step two, the ALJ found that Pigg suffers the following severe impairments: anxiety and depression. (*Id.*). At step three, the ALJ concluded that Pigg's impairment or combination of impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16).

Next, the ALJ found that Pigg exhibited the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to understand, remember, and carry out simple instructions and tasks; limited to jobs involving casual interaction and contact with coworkers and the general public; limited to jobs with infrequent, and well explained workplace changes; and is able to concentrate for two hours at a time sufficient to complete an eight hour day. (Tr. 17).

At step four, the ALJ found that Pigg cannot perform her past relevant work as a bookkeeper, citing testimony from a vocational expert (VE). (Tr. 22). Nevertheless, the ALJ proceeded to step five, finding there exists a significant number of jobs in the

national economy that Pigg can perform, particularly laundry laborer, stubber, and cutter II. (*Id.*).

On April 24, 2017, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-6). Pigg filed her complaint with this court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Pigg contends substantial evidence does not support the ALJ's decision because the ALJ erred in her assessment of the medical opinions, failed to fully develop the record, and presented the Vocational Expert with an incomplete hypothetical. (Doc. 10 at 3). For the following reasons the undersigned disagrees.

### A. The ALJ Properly Assessed the Medical Opinion Evidence

Pigg contends the ALJ erred by assigning her treating physician's opinion no weight and by assigning only partial weight to the consultative examiner's and the state agency examiner's opinions. (Doc. 10 at 11-13).

When considering opinion evidence, the ALJ must give a treating physician's opinion controlling weight or articulate good reasons why less weight or no weight is warranted. 20 C.F.R. §404.1527(c)(2). "Good cause exists 'where the opinion was not bolstered by the evidence or where the evidence supported a contrary finding.'" *Hunter v. SSA*, 808 F.3d 818, 823 (11th Cir. 2015) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 997)). Good cause also exists if "the opinion was conclusory or inconsistent with the doctor's own medical records." *Lewis v. Callahan*, 125 F.3d 1436,

6

1440 (11th Cir. 1997). If the ALJ articulates "specific justification" for the weight accorded, her finding "will not be second guessed." *Hunter*, 125 F.3d at 823.

Dr. Drew Jamieson at Shoals Family Therapy treats Pigg for her anxiety and depression. (Tr. 288, 306-08). Dr. Jamieson treated Pigg from January 2013 through July 2014. (*Id.*). Despite the length of treatment, the record contains a mere four pages of information from Dr. Jamieson. (*Id.*). On May 25, 2014, Dr. Jamieson submitted a letter which denotes his diagnoses, a Global Assessment Functioning score of 67, and his opinion that Pigg's "mood disorder is debilitating to the degree it would significantly interfere with her mental abilities to perform work related functions." (Tr. 288). Nevertheless, the letter contains no basis for Dr. Jamieson's analysis aside from Pigg's subjective reports to Dr. Jamieson. (*Id.*).

Similarly, the remaining three pages are merely a recitation of subjective symptoms Pigg reported to Dr. Jamieson at each visit. (Tr. 306-08). The only hint of objective medical evidence that possibly supports Dr. Jamieson's opinion is a note on March 15, 2013, stating he "[a]dministered the DES indicating a moderate level of dissociation." (Tr. 306). However, no evidence of the test exists in the record.

Simultaneous to her visits with Dr. Jamieson, Certified Registered Nurse Practitioner Gina Brewer treated Pigg at St. Florian Clinic. (Tr. 204-12). In 2013, Pigg reported to Dr. Jamieson on March 21 that "sleep was a big problem" and on April 4 that she had "minimal improvement in sleep . . . ." (Tr. 306). Conversely, during examination by Brewer on March 27, 2013, Pigg denied anxiety, depression,

7

and irregular sleep patterns. (Tr. 208). Moreover, she demonstrated normal affect, no anxiety, no agitation, no anger, and appropriate speech with clear thought process. (Tr. 209).

Likewise, during a routine visit on March 20, 2014, Brewer noted that Pigg was "doing well." (Tr. 204). Again, Pigg denied fatigue, anxiety, depression, and irregular sleep patterns. (*Id.*). Notably, she was alert x3, exhibited no psychomotor retardation, had normal affect, no anxiety, no agitation, no anger, and her speech was appropriate with clear thought process. (Tr. 205). Nevertheless, on April 3, Pigg reported to Dr. Jamieson that she had no improvement in her functioning, was staying in bed often, and had frequent migraines. (Tr. 307).

Further substantial evidence coheres with July 2014 visits with Dr. Jamieson; Dr. Miriam Drummond, consultative examiner; and Dr. Danny McFall, her internist. (Tr. 308, 290-95, 299-303). On July 14, 2014, Pigg reported to Dr. Jamieson that she was having trouble sleeping, had feelings of panic about work, and could not picture herself being able to function at work, yet she had not worked since she "resigned/retired" in July 2012. (Tr. 308, 32, 124).

Pigg also met with Dr. McFall on July 14. (Tr. 299). Pigg denied difficulty with concentration, anxiety, mental problems, and depression. (Tr. 300). On examination, Pigg demonstrated no focal deficits, and was alert and oriented with normal thought content and affect. (Tr. 301-02).

Moreover, less than two weeks earlier on July 3, Dr. Drummond reported that Pigg was oriented to person, place, and time. (Tr. 290, 293). She was alert throughout the interview, maintained good eye contact, and spoke normally and clearly. (*Id.*). Moreover, Pigg's responses were coherent, her thought processes were clear, and her thinking logical. (*Id.*). While Pigg struggled in the Digit Span tasks, and could not spell "world" backward, she could follow both verbal and written instructions, and demonstrated good use of basic vocabulary and math skills and good capacity for abstract thinking and understanding. (*Id.*). Dr. Drummond further remarked that Pigg manages her medications, manages her finances (with some difficulty), can prepare simple meals, wash dishes, launder clothes, and drive. (*Id.*).

Pigg asserts the ALJ erred by assigning no weight to Dr. Jamieson's opinion and only partial weight to Drs. Drummond and Estock's opinions. The ALJ elucidated that Pigg's GAF (Global Assessment Functioning) score of 67 indicating only mild functional impairment starkly contrasted Dr. Jamieson's opinion that Pigg's impairment would significantly interfere with her ability to perform work-related functions. (Tr. 21, 288). Further, the ALJ cites Dr. Jamieson's mere recitations of Pigg's subjective symptoms and the lack of any objective test findings. (*Id.*). The undersigned finds that the ALJ clearly articulated her reasoning for concluding that Dr. Jamieson's opinion is not bolstered by objective medical evidence and is inconsistent with his own medical records, namely the GAF score he obtained after assessing Pigg.

Moreover, the ALJ clearly articulated her reasoning for according Drs. Drummond and Estock's opinions only partial weight. The ALJ accorded the portion of Dr. Drummond's opinion that Pigg suffered moderate impairment in concentration significant weight and found it consistent with the evidence in the record and at the hearing. (Tr. 21). However, she assigned little weight to the portions of Dr. Drummond's opinion that endorsed limitations on memory functioning, noting Dr. Drummond's own observations that Pigg was oriented to person, place and time; could recall three out of three named items immediately and after a three-minute delay; and could remember four recent presidents, her social security number, and the number of months in a year. (Tr. 21). Pigg could not recall how many weeks are in a year, yet Dr. Drummond opined that Pigg "appeared to be a good historian." (Tr. 295).

The ALJ assigned only little weight to the portion of Dr. Estock's (state agency consultant) opinion that Pigg "may benefit from a flexible schedule and that feedback from supervisors and coworkers should be casual and non-confronting." (Tr. 20). The ALJ noted the Dictionary of Occupational Titles does not define these "limitations," nor are they supported by the objective evidence. (*Id.*). In the first instance, Dr. Estock's findings contradict the objective medical evidence that Pigg appeared to be able to follow instructions, both written and spoken, and appeared to be only moderately impaired in her ability to adapt to change. (Tr. 295). Pigg was cooperative and pleasant throughout her interview with Dr. Drummond. (Tr. 294).

These findings do not suggest that Pigg could not deal with confrontation or criticism or adhere to a schedule.

Pigg worked at the same location as a bookkeeper for fourteen years, working a schedule of eight hours a day, five days a week. (Tr. 147). The medical evidence first records Pigg's complaints of depression in 2006, yet she continued working eight hours a day for six more years. (Tr. 186). Moreover, her job consisted of posting accounts payable and receivable, making bank deposits, and paying bills on time. (Tr. 36). Pigg remarked that this became impossible, yet she was not reprimanded nor let go and, in fact, continued working until she decided to "resign/retire" in July of 2012. (Tr. 32).

The ALJ assigned great weight to the remainder of Dr. Estock's opinion, finding it consistent with the record as a whole. (Tr. 20). *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-3 (11th Cir. 2012) (finding no error where the ALJ credited the opinion of non-treating sources over a treating one when the ALJ properly explained the weight it gave to various medical opinions and clearly articulated its reasons.). For the foregoing reasons, the undersigned finds the ALJ did not commit reversible error in her assignment of weight to the medical opinion evidence.

### B. The ALJ Did Not Fail to Develop the Record

Pigg contends the ALJ failed to fully develop the record by not seeking more evidence from Dr. Jamieson beyond the three pages submitted post-hearing, especially the DES test alluded to in Dr. Jamieson's notes. (Doc. 10 at 14).

Pigg bears the burden of proving her disability and of providing all material evidence that proves her disability. 20 C.F.R. § 404.1512(a)-(c). The agency has the duty to develop a complete medical history for the twelve months preceding the month Pigg filed her application. *Id.* at (d)(1). The agency had the responsibility to develop the record from April 10, 2013, to April 10, 2014. (Tr. 12). "[W]hen the medical evidence [] receive[d] . . . is inadequate to determine whether [a claimant is] disabled, [the Commissioner] will need additional information to reach a determination or decision." 20 C.F.R. § 404.1512(e)).

The ALJ has the duty to develop the record when "the medical source contains an ambiguity that must be resolved, does not contain all the necessary information, or does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." *Id.* at (e)(1). "However, when the evidence in the record is sufficient to support the ALJ's determination, the ALJ does not have a duty to obtain additional medical evidence." *Lindsey v. Comm'r of Soc. Sec.*, No. 17-15773, 2018 U.S. App. LEXIS 18718, at *9 (11th Cir. July 10, 2018) (quoting *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)).

12

Dr. Jamieson treated Pigg for her depression and anxiety. (Tr. 288). At the beginning of the hearing, in Pigg's presence and after directly addressing her, the ALJ addressed her attorney. (Tr. 29). The ALJ informed Pigg's attorney that although there was a one-page statement from Dr. Jamieson, there were no records to support the assessment Dr. Jamieson claimed in the statement. (Tr. 30). Pigg's attorney informed the ALJ that the records were outstanding, despite his prior requests a few months earlier, the previous Thursday, and again that very morning. (*Id.*). The ALJ sought clarification that additional evidence from Dr. Jamieson remained the only evidence outstanding. (*Id.*). Mr. Goddard confirmed that it was, to which the ALJ stated she would leave the record open for ten days to receive it. *Id.*

Again, at the conclusion of the hearing, the ALJ remarked directly to Ms. Pigg that she would leave the record open for ten days to receive the evidence from Dr. Jamieson at Shoals Family Therapy. (Tr. 46). The ALJ further remarked that after that she would assess the evidence in the record and render a decision forthwith. (*Id.*).

Based on the foregoing review, there exists no dispute the ALJ notified Pigg and her attorney that Dr. Jamieson's records were incomplete. Further, she extended Pigg ten days to submit the records and clarified these records were all that remained outstanding. Post-hearing, the ALJ received three additional pages to Dr. Jamieson's initial letter regarding the relevant time-period. At the hearing, Pigg's attorney confirmed these were the only records outstanding.

For these reasons, the undersigned finds the ALJ fulfilled her duty to develop when she left the record open until submission of the records, subsequently received them into the record, then considered them with the entire record. Moreover, her duty to develop the record only existed to the extent the medical evidence received was inadequate to determine disability. Therefore, the ALJ fulfilled any responsibilities she had to develop the record. *See Williams v. Comm'r, SSA*, 703 F. App'x 780 (11th Cir. 2017) (finding the ALJ fulfilled his duty to develop the record where he requested records, received records of the relevant time period, and plaintiff's attorney affirmed the record was complete).

C. **The ALJ Presented Complete Hypotheticals to the Vocational Expert**

Pigg asserts the ALJ erred by not posing a hypothetical that "included her limitations in managing stress, following a schedule, and responding to criticism." (Doc. 10 at 15). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Forrester*, 455 F. App'x at 903 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). However, "the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ found that Pigg's impairments could reasonably cause her alleged symptoms, but the intensity, persistence, and limiting effect of the symptoms are not consistent with the medical evidence. (Tr. 18). Moreover, she concluded that Dr.

Estock's opinion that Pigg "may benefit" from a flexible schedule and that feedback and criticism in the workplace should be casual and non-confronting are not defined by the Dictionary of Occupational Titles, nor supported by the record. (Tr. 20). Thus, the ALJ was not required to include these limitations in her hypothetical.

Furthermore, the ALJ determined Pigg could understand, remember, and carry out simple tasks and instructions; concentrate for two hours at a time sufficient to complete an eight-hour work day; and perform work involving casual interaction with coworkers and the general public with infrequent and well-explained workplace changes. (Tr. 17). Substantial evidence supports these findings and did not warrant any additional limitations.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 9th day of August, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE